IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
THE NEWARK GROUP,              )
                               )    2:08-cv-02623-GEB-DAD
          Plaintiff,           )
                               )
     v.                        )    ORDER DENYING DOPACO'S MOTION
                               )    FOR PARTIAL SUMMARY JUDGMENT*
DOPACO, INC.,                  )
                               )
          Defendant.           )
_____)
```

Defendant Dopaco, Inc. ("Dopaco") filed a motion for partial summary judgment on Plaintiff The Newark Group's ("Newark") Resource Conservation and Recovery Act ("RCRA") and negligence per se claims on April 30, 2010.[1] (Docket No. 91.) Dopaco argues it is entitled to summary judgment on these claims because Newark cannot show that the toluene contamination at 800 West Church Street in Stockton, California (the "Property") presents an imminent and substantial

---

[*] This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

[1] Dopaco's summary judgment motion was initially scheduled for hearing on June 7, 2010. However, in an order filed on May 13, 2010, in response Newark's ex parte motion for a continuance of the hearing date for Dopaco's motion, and because the parties were conducting discovery at the risk of noncompliance with the discovery completion date, and the congested nature of the court's docket, three scheduling dates were modified, and the hearing date on Dopaco's summary judgment motion was vacated. Subsequently, Dopaco re-noticed its summary judgment motion on May 25, 2010, scheduling the motion for hearing on August 16, 2010.

1

1 endangerment to health or the environment.  (Dopaco Mot. for Partial
2 Summ. J. 2:4-7.)
3        Newark opposes Dopaco's motion, arguing it has demonstrated
4 that the toluene contamination on the Property presents an imminent
5 and substantial endangerment because it plans on demolishing the
6 buildings on the Property, which will result in toluene exposure; and
7 soil vapor samples indicate the presence of methane at levels that are
8 explosive and present an asphyxiation risk.  (Newark Opp'n to Mot. for
9 Partial Summ. J. 1:21-2:9.)  Newark further argues that it is entitled
10 to partial summary judgment on its RCRA claim based upon this
11 evidence.  (Id. 7:5-7.)
12        Dopaco objects in its reply brief to much of the evidence
13 upon which Newark relies to oppose the motion.  Newark filed a
14 "response" to Dopaco's reply brief to which Dopaco also objects.
15 Since Newark's "surreply" is unauthorized it is stricken.  Empire Fire
16 and Marine Ins. Co. v. Rosenbaum, No. CV-F-06-1458 OWW/WMW, 2007 WL
17 951699, at *1 n.2 (E.D. Cal. Mar. 28, 2007) (stating that "[a]bsent
18 prior authorization, a sur-reply brief is not permitted by [the] . . .
19 Local Rules of Practice for the Eastern District of California"); see
20 also Williams v. Barteau, No. 1:08-CV-546 AWI DLB, 2010 WL 1135956, at
21 *1 n.1 (E.D. Cal. Mar. 22, 2010) (finding that the Eastern District's
22 Local Rules do not permit surreplies); Smith v. Pac. Bell. Tel. Co.,
23 Inc., 649 F. Supp. 2d 1073, 1083-84 (E.D. Cal. 2009) (same).
24                    **I.   SUMMARY JUDGEMENT LEGAL STANDARD**
25        A party seeking summary judgment bears the initial burden of
26 demonstrating the absence of a genuine issue of material fact for
27 trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If this
28 burden is satisfied, "the non-moving party must set forth, by

affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, <u>specific</u> <u>facts</u> showing that there is a genuine issue for trial." <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (quotations and citation omitted) (emphasis in original). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non-movant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." <u>Cordiano v. Metacon Gun Club, Inc.</u>, 575 F.3d 199, 204 (2nd Cir. 2009) (citations omitted); <u>see also</u> <u>Town House, Inc. v. Paulino</u>, 381 F.2d 811, 814 (9th Cir. 1967) (stating when "the burden of proof falls to the opposing party, [that party] must come forward with facts, and not allegations, to controvert the moving party's case").

All reasonable inferences that can be drawn from the facts "must be drawn in favor of the non-moving party." <u>Bryan v. McPherson</u>, 608 F.3d 614, 619 (9th Cir. 2010). However, only admissible evidence may be considered. <u>See</u> <u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002) (stating that "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment") (citations omitted); <u>Beyene v. Coleman Sec. Services, Inc.</u>, 854 F.2d 1179, 1181 (9th Cir. 1988) (stating that "[i]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment").

## II.   PROCEDURAL HISTORY

Newark previously unsuccessfully moved for partial summary judgment on its RCRA claim, arguing in pertinent part: "since the

3

toluene contamination on the Property is in excess of the standards set by the governmental regulatory agencies, th[e] contamination evidence is sufficient to show the existence of a hazardous waste which may present an imminent and substantial endangerment to health or the environment." (Docket No. 90 9:11-15.)

The order denying Newark's motion was filed on April 2, 2010, and concluded:

> Newark fail[ed] to establish that the contamination "may present an imminent and substantial endangerment to health or the environment . . . ." 42 U.S.C. § 6972(a)(1)(B). Newark was required to show more than just that toluene contamination exists on the Property. The risk of endangerment from the toluene contamination "must be imminent for there to be a claim under RCRA." [citation omitted]. . . "In sum, evidence that certain samples taken from the [Newark Property] exceeded [government] standards simply provides an inadequate basis for a jury to conclude that federal law, specifically, [RCRA's citizen suit provision, § 7002(a)(1)(B),] [42 U.S.C. § 6972(a)(1)(B)], has been violated. Absent additional evidence, the mere fact that [Newark] has produced such samples does not support a reasonable inference that [the contamination on its Property] presents an imminent and substantial endangerment" to health or the environment. [citation omitted]. . .

(Id. 13:15-14:15.)

Dopaco now argues it is entitled to partial summary judgment on Newark's RCRA and negligence per se claims, since Newark cannot demonstrate that the toluene contamination on the Property presents an imminent and substantial endangerment to health or the environment.

**III.   FACTUAL RECORD FOR DOPACO'S PARTIAL SUMMARY JUDGMENT MOTION**

**A.   Dopaco's Objections to Newark's Evidence**

Dopaco argues the following evidence on which Newark relies should be excluded under Federal Rule of Civil Procedure 37(c)(1) ("Rule 37(c)(1)"): 1) Newark's expert, Peter Krasnoff's, supplemental

4

report dated June 9, 2010 and Krasnoff's declaration dated August 2, 2010; 2) two documents included in Newark's July 29, 2010 "Supplemental Disclosure"; and 3) a declaration from Joseph Michaud. (Dopaco Objections to Evidence 1:7-13, 14.)

### 1. Peter Krasnoff's June 9, 2010 "Supplemental" Expert Report and August 2, 2010 Declaration

Dopaco argues that Krasnoff's June 9, 2010 supplemental expert report includes new evidence, authorities and opinions in violation of Federal Rule of Civil Procedure 26(a)(2)(B) ("Rule 26(a)(2)(B)")[2], and should be excluded under Rule 37(c)(1).[3] Dopaco argues that Krasnoff's June 9, 2010 report does not constitute a supplemental report, but rather, is an attempt to circumvent the deadline for disclosing expert reports. Dopaco further contends since Krasnoff's August 2, 2010 declaration relies upon his supplemental report, it too should also be excluded. Newark counters that Dopaco waived its ability to exclude Krasnoff's report under Rule 37(c)(1) by failing to bring this challenge before the magistrate judge prior to the expert discovery completion date. (Newark Opp'n 14 n.1.)

Dopaco does not counter Newark's waiver argument. Newark served Dopaco with Krasnoff's supplemental report on June 9, 2010, prior to the July 27, 2010 expert discovery completion date. Further,

---

[2] Federal Rule of Civil Procedure 26(a)(2)(B) requires that a parties' expert witnesses provide to the opposing party a written report including certain information, including "a complete statement of all opinions the witness will express and the basis for them" as well as "the facts or data considered by the witness in forming" his opinions.

[3] Federal Rule of Civil Procedure 37(c)(1) provides that: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

5

the Court's February 3, 2009 scheduling order instructed the parties to direct "all discovery-related matters to the Magistrate Judge assigned to this case." (Docket No. 11 2 n.2.); see also E.D. Cal. R. 302(c)(1) (prescribing that "[a]ll discovery motions, including [motions to exclude brought under] Fed. R. Civ. P. 37" are to be heard by a magistrate judge.). Since Dopaco has not explained why it failed to seek relief before the Magistrate Judge as required by Local Rule 302(c)(1) and the scheduling order, Dopaco's objections to the admissibility of Krasnoff's supplemental report and August 2, 2010 declaration are overruled. See Freeman v. Allstate Life Ins. Co., 253 F.3d 533, 537 (9th Cir. 2001) (upholding district court judge's decision not to sanction because of moving party's "fail[ure] to prosecute the issue before the magistrate judge as is required by" the Eastern District's Local Rules and the court's order).

    **2. Newark's July 29, 2010 "Supplemental Disclosures" & Joseph Michaud's July 30, 2010 Declaration**

Dopaco also objects to the admissibility of two documents – the April 17, 2007 Notice of Intent to Demolish issued by the City of Stockton and the November 30, 2007 Phased Plan – which Newark disclosed to Dopaco via email on July 29, 2010. Dopaco argues Newark had not previously produced these documents despite having been propounded by requests for the production of documents. (Dopaco Objections to Evidence 14:14-23.) Dopaco further objects to the admission of the July 30, 2010 declaration of Newark's vice-president, Joseph Michaud, arguing Newark failed to previously disclose his identity. (Id. 15:17-20.)

Dopaco, however, has not supported its position with averments showing that this evidence should be excluded. Since

6

Dopaco's bare arguments are insufficient to satisfy its burden, Dopaco's objections to this evidence are overruled.

### B.   The Uncontroverted Facts[4]

Dopaco's partial summary judgment motion essentially points to the absence of facts supporting the "imminent and substantial endangerment" element of Newark's RCRA claim.  Therefore, the facts considered are the uncontroverted facts provided by Newark's opposition to Dopaco's partial summary judgment motion.[5]

On April 17, 2007, the City of Stockton (the "City") issued a Notice and Order of Intent to Abate by Demolition ("Abatement Order") against the Property, alerting Newark of the City's "intent[] to begin legal proceedings on the abatement by demolition of certain structure(s) located on [the Property] owned by Newark . . . ." (Stafford Decl. Ex. B.)[6]  The Abatement Order instructed Newark to develop a plan to rehabilitate the Property within forty-five days or develop a plan for demolishment.  (Id.)  Newark's Vice President, Joseph Michaud, declares that "[i]n response to the City's insistence that the building [on the Property] be demolished, Newark has entered into an agreement with the City by which the existing structures on

---

[4] A more thorough discussion of Dopaco's tenancy, Newark's acquisition of the Property and the discovery of toluene contamination can be found in the Court's April 2, 2010 order denying Newark's motion for partial summary judgment.

[5] Dopaco's Response to Newark's Separate Statement of Undisputed Facts objects to the admissibility of Newark's evidence; Dopaco, however, has not controverted the evidence in Newark's opposition.

[6] Newark requests that judicial notice be taken of this document.  However, this request is denied as moot since this document is attached as an exhibit to Stafford's declaration.  Further, Newark's other requests for judicial notice are denied as moot since they are not necessary to resolve Dopaco's motion.

the Property will be demolished in stages." (Michaud Decl. ¶ 6.) The plan developed by the City and Newark "calls for a phased demolition, culminating with demolition of the remaining structure or sale to interested party by June 1, 2012." (Id.)

Further, Robert Mullen, Newark's Chairman of the Board, President, and Chief Executive Officer, declares that upon the "closure of the paper mill [on the Property in March 2003], Newark began making preparations to sell the Property." (Mullen Decl. ¶ 2.) Mullen also declares that "[p]arts of the existing building on the Property are nearly 100 years old, and the structure has outlived its useful life. In recognition of that fact, virtually every consideration of the Property's future is predicated on the building being completely demolished." (Id. ¶ 2.) Mullen further declares that "[a]ll prospective buyers [of the Property have] manifested a[n] . . . intent to demolish and redevelop the Property, with one exception . . . who was evidently unaware of the City's demolition order at the time it was considering the Property." (Id. ¶ 11.)

Newark's expert, Peter Krasnoff, declares that soil vapor samples from under the concrete slab of the basement floor of the Property reveal that toluene is under the slab. (Krasnoff Decl. ¶¶ 11, 12.) Krasnoff also declares that soil vapor testing revealed high levels of methane in the soil below the slab. (Id. ¶ 12.) Specifically, Krasnoff declares:

> One of the samples contained methane at a concentration of 171,000 ppm, or 17% methane. [citation omitted.] That concentration of methane is so high that it is even above methane's Upper Explosive Limit (*i.e.*, the concentration at which the mixture is too rich to explode when an ignition source is introduced), which is 15%. When the slab is broken up during demolition, however, the sub-slab methane will mix with the surrounding atmosphere, which could create an exceedingly

8

> dangerous explosive condition (the Lower Explosive Limit for methane is 5%), and a threat of asphyxiation, because methane displaces oxygen . . . .

(Id.) Krasnoff further opines that:

> The methane detected under the floor of the Property is almost certainly a by-product of the natural degradation of the existing toluene contamination. Although the underground testing . . . shows that other hydrocarbons are present in the soil at low levels, toluene is by far the most abundant among them . . . . Thus, even if other degraded hydrocarbons account for some of the methane, by far the largest contributing source is the toluene contamination that is the subject of this litigation.

(Id. ¶ 13.)

Krasnoff also declares that "dangerous levels of toluene are . . . likely to be encountered by workers tasked with demolishing the building [on the Property]." (Id. ¶ 15.) Krasnoff declares that "[b]ased on Henry's Law, which describes the partitioning of vapors and water, and the reported concentrations of toluene in the subsurface, toluene could be present in the vapor phase at over 400,000 parts per million (ppm)" and "[w]hen workers expose soil, toluene trapped in the interstitial soil voids will be released." (Id. ¶ 16.) Krasnoff further declares that "[w]hen the slab is broken up during demolition . . . the sub-slab methane will mix with the surrounding atmosphere, which could create an exceedingly dangerous explosive condition . . . and a threat of asphyxiation . . . ." (Id. ¶ 12.) Lastly, Krasnoff declares that "[t]he findings of high levels of methane below the floor of the Property, and the scheduled demolition of the main building provide further support for [his] opinion that 'The toluene and methyl isobutyl ketone (MIBK) present in the subsurface at 800 West Church Street in Stockton, California must

9

be remediated to address the threat to human health and the environment.'" (Id. ¶ 17.)

## V.   DISCUSSION

### A.   Plaintiff's RCRA Claim

Dopaco argues its summary judgment motion on Newark's RCRA claim should be granted "because Newark cannot show that the contamination presents an imminent and substantial endangerment to health or the environment." (Dopaco Mot. for Partial Summ. J. 5:15-19.) Dopaco contends Newark has not evaluated whether there is a population at risk or whether there are potential exposure pathways, and that Newark's own expert has opined that the contamination on the Property has remained in the northwest corner for twenty-five years. (Id. 2-4.) Newark counters, arguing that the evidence provided in its opposition demonstrates "exposure to Dopaco's toluene contamination [is] not theoretical, speculative, nor remote in time." (Newark Opp'n to Mot. for Partial Summ. J. 1:23-24.) Specifically, Newark argues that the demolition within the next twenty-two months of the buildings on the Property will result in the "release of toluene" and "methane at levels [that] . . . are explosive and pose asphyxiation risks." (Id. 2:2, 6-8.) Newark contends this evidence shows "there is an 'exposure pathway[]' for the toluene contamination at the property . . . ." (Id. 6:21-22.)

"RCRA is a comprehensive statute designed to reduce or eliminate the generation of hazardous waste and to minimize the present and future threat to human health and the environment created by hazardous waste." Crandall v. City and Cnty. of Denver, 594 F.3d 1231, 1233 (10th Cir. 2010) (quoting 42 U.S.C. § 6902(b)).  Under

RCRA's citizen-suit provision, 42 U.S.C. § 6972(a)(1)(B), "any person may commence a civil action on his own behalf":

> against any person, . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . .

Therefore, to prevail on its RCRA claim, Newark must "prove that [the toluene contamination on the Property] 'may present an imminent and substantial endangerment to health or the environment.'" Crandall, 594 F.3d at 1236.[7]

> A finding of "imminency" under [42 U.S.C. § 6972(a)(1)(B)] does not require a showing that actual harm will occur immediately so long as the risk of threatened harm is present: "An 'imminent' hazard may be declared at any point in a chain of events which may ultimately result in harm to the public [or the environment]." Price v. United States Navy, 39 F.3d 1011, 1019 (9th Cir. 1994) (internal citation omitted). "Imminence refers 'to the nature of the threat rather than identification of the time when the endangerment initially arose.'" Id. (citing United States v. Price, 688 F.2d 204, 213 (3d Cir. 1982)(quoting H.R. Committee Print No. 96-IFC 31, 96th Cong., 1st Sess. at 32 (1979))). Further, 'substantial' does not require quantification of the endangerment (e.g., proof that a certain number of persons will be exposed, that 'excess deaths' will occur, or that a water supply will be contaminated to a specific degree). . . . [However, there must be] some reasonable cause for concern that someone or something may be exposed to a risk of harm by a release or a threatened release of a hazardous substance if remedial action is not taken. Lincoln, 1993 WL 217429, at *13 (internal citation omitted). "Courts have also consistently held that 'endangerment' means a threatened or potential harm and does not require proof of actual harm. However, at the very least, endangerment or a

---

[7] This, however, is not the only element Newark will have to prove to ultimately prevail.

11

1         threat must be shown." <u>Price</u>, 39 F.3d at 1019
2         (internal citation omitted).

3 (Docket No. 90 9:21-10:13.)

4     Dopaco argues that "[t]he evaluation of Newark's Property is governed by the Regional Water Quality Control Board ('RWQCB') guidance entitled 'Tri-Regional Board Staff Recommendations for Preliminary Investigation and Evaluation of Underground Tank Sites.'" ("RWQCB Recommendations"). (Dopaco Mot. for Partial. Summ. J. 2:26-28.) Dopaco further contends that "Section 2 of Appendix A of the guidance issued by the RWQCB on April 16, 2004 describes the systematic analysis that must be performed to evaluate potentially affected populations and the exposure pathways that would affect them." (<u>Id.</u> 3:1-3.) Dopaco contends that because "none of the steps detailed in the RWQCB guidance have been conducted [by Newark] . . . there is no basis for evaluating potentially affected populations and exposure pathways." (<u>Id.</u> 4:4-6.) Newark counters arguing that the RWQCB Recommendations are "irrelevant to these proceedings" since the RWQCB Recommendations "represent[] only *staff recommendations* to facilitate a coordinated approach to investigation and removal of leaking underground storage tanks." (Newark Opp'n 11:26-28) (emphasis in original).

    The RWQCB Recommendations upon which Dopaco relies provide "recommendations . . . for the initial investigation of underground tank leak incidents and routine tank removals." (Pulliam Decl. Ex. A.) The RWQCB Recommendations further state that they are a "technical report by staff of the California Regional Water Quality Control Board" and explicitly disclaim that they do not express any "policy or regulation." (<u>Id.</u>) Dopaco, therefore, has not shown that

Newark was required to satisfy the RWQCB Recommendations in order to withstand Dopaco's partial summary judgment motion.

Newark also argues Dopaco's motion should be denied because Newark has established an "exposure pathway" by which the toluene contamination on the Property can cause substantial and imminent harm. (Newark Opp'n 9:10-10:18.) Newark has provided evidence that the building on the Property "will be completely demolished [or sold] by June 2012." (Michaud Decl. ¶ 8, Ex. B.) Newark has also provided the expert opinion of Peter Krasnoff, that: "dangerous levels of toluene are . . . likely to be encountered by workers tasked with demolishing the building"; "[w]hen workers expose soil, the toluene trapped in the interstitial soil voids will be released; and that "during demolition . . . the sub-slap methane will mix with the surrounding atmosphere, which could create an exceedingly dangerous explosive condition . . . ." (Krasnoff Decl. ¶¶ 12, 15-17.) Newark's evidence, therefore, raises a genuine issue of material fact as to whether the toluene contamination on the Property "may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Newark has satisfied its burden in opposing Dopaco's partial summary judgment motion and Dopaco's motion is denied. Newark, however, has not demonstrated that it is entitled to partial summary judgment, and its request for partial summary judgment on its RCRA claim is also denied.

**B. Newark's Negligence Per Se Claim**

Dopaco also argues Newark's negligence per se claim is predicated upon its RCRA claim and "[b]ecause Newark cannot establish an essential element of its RCRA claim, its negligence *per se* claim also fails." (Dopaco Mot. for Partial Summ. J. 7:4-8.) Since Dopaco

has not prevailed on its motion on Newark's RCRA claim, its request for partial summary judgment on Newark's negligence per se claim is also denied.

### VI.  CONCLUSION

For the stated reasons, Dopaco's motion for partial summary judgment on Newark's RCRA and negligence per se claims is DENIED.

Dated: September 12, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge