H. CHRISTIAN L'ORANGE (SBN #71730)
chris.lorange@dbr.com
MICHAEL P. PULLIAM (SBN #215435)
michael.pulliam@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105-2235
Telephone:     (415) 591-7500
Facsimile:      (415) 591-7510
E-mail:          christian.lorange@dbr.com

Attorneys for Defendant
DOPACO, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE NEWARK GROUP, INC.,<br><br>            Plaintiff,<br><br>     v.<br><br>DOPACO, INC. and DOES 1-10,<br><br>            Defendants. | Case No. 2:08-CV-02623-GEB-DAD<br><br>**DOPACO, INC.'S NOTICE OF MOTION AND MOTION TO REOPEN DISCOVERY**<br><br>Date:     November 22, 2010<br>Time:    9:00 a.m.<br>Judge:   Honorable Garland E. Burrell<br>Ctrm:    10, 13th Floor |

## NOTICE OF MOTION

TO THE NEWARK GROUP, INC. AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT at **9:00 a.m. on November 22, 2010**, or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Garland E. Burrell, located at 501 I Street, Sacramento, California, defendant Dopaco, Inc. ("Dopaco") will move the Court to reopen discovery in order to respond to new documents, new expert opinions, new witnesses and a new theory of RCRA liability predicated upon alleged methane contamination that were injected into the case by The Newark Group, Inc. ("Newark") well after the applicable discovery cut-off.  In order to fully and fairly respond to Newark's new theory of RCRA liability, Dopaco should be allowed the following discovery:  (1) a site inspection of 800 West Church Street (the "Property"), allowing Dopaco entry onto the Property so that it may inspect, measure,

1  survey, photograph, and sample soil and groundwater beneath the Property in support of
2  submitting a supplemental expert report addressing Newark's new RCRA theory of liability; (2)
3  the deposition of Newark's expert, Peter Krasnoff ("Krasnoff"), in order to explore his June 9,
4  2010 supplemental expert report and August 2, 2010 declaration; (3) written discovery
5  concerning Newark's new RCRA theory of liability including limited interrogatories and requests
6  for admissions; (4) the deposition of Joseph Machard, a witness who Newark did not disclose
7  until August 2, 2010; and (5) permitting Newark to depose Dopaco's expert(s) on the results of
8  the testing and sampling performed on the Property.  In addition to this discovery, Dopaco
9  requests that the Court vacate the pretrial conference hearing (November 22, 2010) and the trial
10 date (January 25, 2011) and set a status conference for January 25, 2011 at which point the case's
11 trial readiness can be evaluated.  Defendant makes this motion pursuant to Federal Rules of Civil
12 Procedure Rule 16(b)(4) and Eastern District of California Local Rule 230.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

From the outset of this action, Newark's allegations focused on alleged toluene contamination at the Property.  The crux of Newark's allegations was that Dopaco had spilled toluene in the course of using underground storage tanks located on the northwest corner of the Property.[1]  Consistent with these allegations, fact discovery focused on toluene contamination and the underground storage tanks.  The parties' expert disclosures also focused on these issues as did Newark's motion for summary judgment.

It was not until after this Court had denied Newark's motion for summary judgment and Dopaco filed its motion for summary judgment addressing Newark's RCRA theory of liability that Newark started producing new documents, new expert opinions, and new witnesses to

---

[1] Dopaco anticipates Newark will assert that it also alleged contamination and spills in the basement of the Property where Dopaco's former printing operations were located but Newark produced no evidence of any contamination in the basement (toluene or methane) until it disclosed Krasnoff's "supplemental" expert report on June 9, 2010 – more than six months after the deadline for disclosing expert reports.

support a new theory of RCRA liability based on methane contamination – a substance that is not mentioned in any of Newark's timely disclosed evidence, including multiple groundwater and soil samples conducted by two contractors. As a result, Dopaco never had an opportunity – or any reason – to conduct discovery concerning the centerpiece of Newark's case, alleged methane contamination at the Property.

All that Dopaco seeks by this motion is the opportunity to fully and fairly respond to the new documents, new expert opinions, new witnesses and new theory of RCRA liability that Newark unilaterally injected into the case after the close of discovery.

## II.
## FACTS

It is undisputed that none of Newark's timely disclosed evidence or expert reports mentioned methane – let alone alleged methane contamination – as the basis for Newark's RCRA claim. Thus, Dopaco had no opportunity or reason to conduct any discovery concerning methane. It was not until more than eight months after the close of fact discovery and six months after the deadline for disclosing expert reports that Newark started disclosing new evidence to support a RCRA theory of liability predicated on methane contamination.

### A.   **Newark's Untimely Disclosures**

Pursuant to the Court's scheduling and the agreement of the parties, the deadline for conducting fact discovery was October 1, 2009, and the deadline for disclosing expert reports was December 2, 2009. Since these deadlines have passed, Newark has made the following untimely disclosures:

1. Krasnoff's June 9, 2010 supplemental expert report disclosing Newark's new methane-based theory of RCRA liability for the first time;

2. Newark's July 29, 2010 production of two previously undisclosed documents concerning an April 2007 Notice and Order of Intent to Abate by Demolition from the City of Stockton concerning demolition of certain structures at the Property;

3. Krasnoff's August 2, 2010 declaration concerning methane contamination which

    set forth opinions, theories, and documents that were not disclosed in his original report or his June 9, 2010 report;

4. The August 2, 2010 declaration of Joseph Machard, a previously undisclosed fact witness responsible for the demolition of certain structures at the Property, concerning anticipated demolition work at the Property as well as toluene and methane contamination issues related to the contamination;

5. Newark's October 14, 2010 production of approximately 200 pages of selected documents from previously undisclosed environmental binders concerning the Property; and

6. Newark's ongoing production of the entire contents of the previously undisclosed environmental binders (containing an estimated 1,400 pages).[2]

**B.** **Dopaco's Response to Newark's Untimely Disclosures**

After receiving and evaluating Krasnoff's June 9, 2010 report, Dopaco requested that Newark withdraw the report on the grounds that it was untimely, and informed Newark it would move to exclude any untimely disclosed evidence in the event that Newark relied upon such evidence to oppose Dopaco's motion for summary judgment, which was filed on April 30, 2010. *See* June 29, 2010 and July 23, 2010 letters from Dopaco to Newark attached as Exhibits 1 and 2. Newark refused to withdraw the June 9 report[3] and Newark's opposition to Dopaco's motion for

---

[2] Newark has allowed counsel for Dopaco to inspect the entire contents of the binders and has agreed to produce them but the full contents of the binders have not been produced yet. Dopaco anticipates the production will be completed by no later than October 22, 2010, but the new documents are voluminous and will take time for counsel for Dopaco and its experts to properly evaluate the newly produced documents, all of which relate to environmental issues concerning the Property. Dopaco has filed a motion before Judge Dale A. Drozd ("Judge Drozd") to limit the use of these documents based on their untimely disclosure.

[3] Dopaco decided against filing a motion to strike before Judge Drozd because Krasnoff's report and the new evidence it relied upon clearly related to the motion for summary judgment pending before this Court. Dopaco also anticipated, correctly so, that Newark would submit yet additional evidence and wanted to avoid serial motions to strike and the possibility of having to litigate the issue twice – once before Judge Drozd and once before this Court. Indeed, even if Dopaco had filed a successful motion to strike Krasnoff's June 9, 2010 report before Judge Drozd, such a ruling would have had no bearing on Krasnoff's August 2, 2010 declaration, Newark's July 29, 2010 document production, or the August 2, 2010 declaration of Joseph Machard. By this footnote, Dopaco is not attempting to reargue its objections to evidence: it is simply explaining its good faith basis for filing objections to evidence in conjunction with its motion for summary judgment rather than filing a motion to strike before Judge Drozd.

summary judgment was predicated entirely on evidence disclosed by Newark after the close of discovery including: (1) Krasnoff's August 2, 2010 declaration; (2) Newark's July 29, 2010 production; and (3) the August 2, 2010 declaration of Joseph Machard. Dopaco filed objections to Newark's evidence, but the Court disagreed and allowed Newark to rely upon the newly disclosed evidence for the purposes of defeating Dopaco's motion for summary judgment. This was the first notice Dopaco received that Newark would be allowed to rely upon a new theory of RCRA liability based on methane contamination.

C.  **Upon Learning that Newark Would Be Allowed to Rely upon Its Methane-Based Theory of RCRA Liability, Dopaco Promptly Sought Discovery to Respond to the Theory**

Upon learning on September 13, 2010 that Newark would be allowed to rely upon its methane based theory of RCRA liability, Dopaco promptly sought Newark's permission to depose Krasnoff and to conduct a site inspection for the purpose of conducting testing, sampling and surveying in order to evaluate the alleged methane contamination. *See* September 21, 2010 letter and September 22, 2010 e-mail from Dopaco to Newark attached as Exhibits 3 and 4. When Newark refused this request, Dopaco promptly filed a motion to compel a site inspection and the deposition of Krasnoff. *See* Docket Number 118. After Judge Drozd denied this motion on October 6, 2010 without prejudice, noting he could not hear the motion absent an order reopening discovery, Dopaco promptly began preparing this motion. *See* Docket Number 119. In the course of preparing this motion, Newark disclosed still more documents starting on October 14, 2010 – documents responsive to requests for production propounded by Dopaco more than 16 months ago – and the parties are still meeting and conferring regarding the production of previously undisclosed environmental documents concerning the Property, which were located at the Property and somehow not discovered until now.

### III.

### ARGUMENT

A.  **Applicable Legal Framework**

Federal Rule of Civil Procedure 16(b)(4) allows the Court to modify its scheduling order "for good cause," a standard that falls midway between "freely given" and "manifest injustice."

Fed. R. Civ. P. 16, advisory committee note of 1983. Courts have wide discretion in determining what kind of showing satisfies this mid-range, good cause standard. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1026-27 (9th Cir. 2006); *see also U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995) ("[w]hether to reopen discovery rests in the court's sound discretion"), *rev'd on other grounds*, *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997). In the Ninth Circuit, the good cause inquiry centers upon the "reasonable diligence" of the moving party. *Noyes v. Kelley Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007).

Good cause to modify a scheduling order will be found when the moving party shows that it: 1) has diligently assisted the district court with creating a working scheduling order; 2) is unable to comply with the scheduling order's deadlines due to matters that could not have reasonably been foreseen at the time of issuance of the scheduling order; and 3) was diligent in seeking an amendment once it became apparent that the party could not comply with the scheduling order. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999); *see also Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009). While *Jackson*'s diligence factors provide a starting point for the inquiry, courts also consider other factors, such as whether the conduct of the opposing party can necessitate modification of a scheduling order. *Noyes*, 488 F.3d at 1173-74.

### B. Newark's Injection Of A New Theory Of Liability Into The Case After The Close Of Discovery Provides Good Cause To Reopen Discovery

Where, as here, a plaintiff introduces a new theory of liability after the close of discovery, a defendant must be allowed to have an opportunity to prepare an appropriate defense through additional discovery. *See Welton v. Consolidated Rail Corp.*, 1993 U.S. Dist. LEXIS 138 (E.D. Pa. Jan. 4, 1993) at *1-7; *see also* 3-16 Moore's Federal Practice – Civil § 16.14[1][b] (explaining that where late-breaking and unforeseeable circumstances impede the moving party from enjoying a fair opportunity to develop needed evidence if original time limits remain in effect, courts are likely to grant extensions in such instances). Specifically, in RCRA suits, limited additional discovery is warranted to allow parties to thoroughly investigate new facts concerning

1  the nature and significance of purported facility contamination.  *See Vernon Village, Inc. v.*
2  *Gottier*, 755 F. Supp. 1142, 1156 (D. Conn. 1990) (In suit alleging RCRA and other violations,
3  the court permitted discovery to be reopened on a limited basis – including additional depositions
4  and production of documents – after the moving party learned from opponent of the nature and
5  precise levels of contamination well after discovery had closed.).  Here, the need to reopen
6  discovery is the direct result of Newark's injection of new documents, new expert opinions, new
7  witnesses, and a new theory of RCRA liability into the case after the close of discovery.

8  Newark's new theory of RCRA liability – founded on the previously undisclosed presence
9  of methane contamination – was first advanced more than eight months after the close of fact
10  discovery and more than six months after the deadline for disclosing expert reports.  Indeed,
11  methane *was not mentioned in a single* Newark disclosure, discovery response, or properly
12  disclosed expert report before June 9, 2010.  Newark now alleges that the newly-discovered
13  methane contamination (only newly discovered because Newark opted not to conduct the testing
14  until after the close of discovery) at the Property presents a risk to construction workers who may
15  be tasked with demolishing various structures pursuant to a late-disclosed 2007 government
16  abatement order.  In short, Newark performed new testing, produced new documents, and
17  disclosed new expert opinions concerning other possible bases of liability after the applicable
18  deadlines had all passed.  Throughout the case, Dopaco had conducted discovery in order to
19  defend against Newark's original and timely disclosed theory of RCRA liability based on
20  purported toluene contamination.  Dopaco cannot reasonably be expected to defend an entirely
21  new theory of RCRA liability predicated on allegations of methane contamination – allegations
22  that were not disclosed until well after the applicable scheduling deadlines – without being
23  permitted to test that theory through discovery.  *Welton*, 1993 U.S. Dist. LEXIS at *1-7; *Vernon*
24  *Village, Inc.*, 755 F. Supp. at 756.  Such conduct alone can provide good cause to modify a
25  scheduling order.  *Id*.

26
27
28

C. **Good Cause Exists to Reopen Discovery Because Dopaco Assisted the Court in Creating a Scheduling Order, Could Not Have Foreseen the Need to Conduct Discovery Concerning Methane when the Order Was Issued, and Acted Diligently Once It Learned Discovery Regarding Methane Was Necessary**

Here, good cause exists to reopen discovery because all the relevant criteria are satisified. There can be no serious dispute that Dopaco diligently assisted the Court in creating a working scheduling order and could not have reasonably foreseen the need to conduct any discovery concerning methane contamination at the time the order was issued. Indeed, Newark did not inject its methane-based theory of RCRA liability into the case until more than a year after entry of the scheduling order. Consequently, the first two criteria of the good cause inquiry are satisfied. *See*, *e.g.*, *Kuschner*, 256 F.R.D. at 688 (explaining that a legitimate lack of "aware[ness] of . . . facts" and "possible bas[e]s" of opposing claims at the time of issuance of the pretrial order urges a finding of diligence).

The final criterion, whether the party seeking to amend a scheduling order was diligent in seeking the amendment once it became apparent that it could not comply with the original dates, is also satisfied here. *See Jackson*, 186 F.R.D. at 608. Dopaco has diligently responded to Newark's methane allegations. After Newark rejected its request for a site inspection, Dopaco promptly filed a motion to compel that was denied without prejudice, with Judge Drozd noting that he could not hear the motion unless discovery was reopened. Through this motion, Dopaco is simply seeking to reopen discovery so that it might have a full and fair opportunity to respond to Newark's methane-based theory of RCRA liability, which Newark unilaterally injected into the case well after the close of discovery.

## IV.

## CONCLUSION

For the reasons set herein, the Court should grant this motion to reopen discovery in order to give Dopaco a full and fair opportunity to respond to new documents, new expert opinions, new witnesses and a new theory of RCRA liability that Newark unilaterally injected into the case after the close of discovery.

Dated: October __, 2010

DRINKER BIDDLE & REATH LLP

By: s/Michael P. Pulliam
    Michael P. Pulliam

Attorneys for Defendant
DOPACO, INC.