1  PETER HSIAO (CA SBN 119881)
   PHsiao@mofo.com
2  MORRISON & FOERSTER LLP
   555 West Fifth Street
3  Los Angeles, California  90013-1024
   Telephone: 213.892.5200
4  Facsimile: 213.892.5454

5  ROBIN S. STAFFORD (CA SBN 200950)
   RStafford@mofo.com
6  MARK POE (CA SBN 223714)
   MPoe@mofo.com
7  MORRISON & FOERSTER LLP
   425 Market Street
8  San Francisco, California  94105-2482
   Telephone: 415.268.7000
9  Facsimile: 415.268.7522

10 Attorneys for Plaintiff
   THE NEWARK GROUP, INC.
11

12               UNITED STATES DISTRICT COURT

13             EASTERN DISTRICT OF CALIFORNIA

14

15 THE NEWARK GROUP, INC.,              Case No. 2:08-CV-02623-GEB-DAD

16             Plaintiff,               **NEWARK'S OPPOSITION TO
                                        DOPACO'S MOTION TO AMEND
17      v.                              TRIAL SCHEDULE, VACATE
                                        TRIAL, AND REOPEN FACT AND
18 DOPACO, INC.,                        EXPERT DISCOVERY**

19             Defendant.              Date:       November 22, 2010
                                       Time:       9:00 a.m.
20                                     Courtroom:  10
                                       Judge:      Hon. Garland E. Burrell, Jr.
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 2

    A.    Newark Repeatedly Told Dopaco that Sumps in the Floor of the Basement Are Among the Likely Release Points for Contamination. ..................................... 2

    B.    Dopaco Learned the Results of the Sub-Slab Testing and About the Methane Data Nearly Two Months Before the Close of Expert Discovery . ......... 5

    C.    Newark Discovered and Promptly Produced the Gold Bond Binders. .................. 6

II.    ARGUMENT ......................................................................................................................... 7

    A.    Legal Standard. .......................................................................................................... 7

    B.    Dopaco Cannot Show Good Cause, Because It Has Not Been Diligent. ............... 8

    C.    None of the Bases Dopaco Identifies Justifies Reopening Discovery and Vacating the Trial Date. ............................................................................................ 9

        1.    The Court has already held that Dopaco waived its opportunity to challenge the methane and demolition evidence ............................................ 9

        2.    Nothing in the Gold Bond binders justifies throwing out the scheduling order or indefinitely delaying the trial. ................................... 10

III.    CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Irving v. County of Sacramento*,
   231 Fed. Appx. 584 (9th Cir. April 17, 2007) ....................................................... 10

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ........................................................................... 7, 8

*Zivkovik v. Southern Cal. Edison Company*,
   302 F.3d 1080 (9th Cir. 2002) ............................................................................ 7


STATUTES

Federal Rule of Civil Procedure 16 .......................................................................... 7, 8

Federal Rule of Civil Procedure 26(e)(1)(A) .............................................................. 6

Resource Conservation and Recovery Act, 42 U.S.C. § 6972 ("RCRA") ..................................... 3

1    With just three months remaining until trial, Dopaco has filed a motion asking this Court

2    to toss out the trial schedule.  Specifically, Dopaco seeks to vacate – not merely continue – the

3    January 25, 2011 trial date and reopen discovery so it can plug the holes in its case.

4    The Federal Rules of Civil Procedure allow trial schedules to be modified only for good

5    cause.  To satisfy this standard, the party seeking modification bears the burden of demonstrating

6    that the relief sought is not necessitated by its own lack of diligence.  Dopaco cannot make this

7    showing because it has had both opportunity and incentive to develop the evidence it now claims

8    to need within the confines of the Court's trial schedule.

9    As the Court has already observed, Dopaco had the opportunity during the discovery

10   period to object or develop evidence in response to Newark's evidence that toluene and its

11   breakdown product methane are present under the basement where Dopaco operated its

12   rotogravure printing business.  It did not do so.  The Court's September 13, 2010 order held that

13   Dopaco's failure to act within the deadlines and procedures set in the trial scheduling order

14   resulted in waiver of its objections to this evidence.  (*See* Order Denying Dopaco's Mot. for

15   Summ. J. at 5-6 [Docket No. 117, filed Sep. 13, 2010].)  Dopaco's only response is to point to the

16   flurry of papers it has filed *after* the Court's September 13 decision as evidence that it has been

17   diligent.  But Dopaco has still not explained its failure to act within the deadlines and in

18   accordance with the procedures set forth in the trial schedule.

19   Nor do the recently discovered Gold Bond binders provide a justification for reopening

20   fact or expert discovery.  These documents do not add any new allegation, argument, or theory of

21   liability beyond those already asserted by Newark throughout this litigation.  It is telling that

22   Dopaco describes the documents from the binders only in vague, general terms.  In fact, Dopaco

23   does not (and cannot) cite to any specific document from the binders as evidence supporting a

24   change in its strategic posture in this case.  Dopaco's argument that additional discovery is

25   needed to deal with them is unsupportable.

26   Newark is ready to proceed to trial.  Dopaco would be ready, too, had it heeded Newark's

27   assertions and evidence about the sources and effects of the toluene contamination at the property

28   and developed evidence on these points.  Because it chose not to, it cannot carry its heavy burden

1    to show the Court why the scheduling order and trial date, of which Dopaco had ample notice,

2    should not be respected.  Because Dopaco cannot carry its burden of proof, its motion must be

3    denied.

4    **I.      FACTUAL AND PROCEDURAL BACKGROUND**

5              **A.      Newark Repeatedly Told Dopaco that Sumps in the Floor of the
                         Basement Are Among the Likely Release Points for Contamination.**

6

7         Since at least July 6, 2009, Dopaco has known of Newark's contention that the floor of the

8    basement Dopaco occupied, particularly the sumps in that floor that were designed to capture

9    chemical spills, were likely release points for the toluene that contaminates the Property today.

10   Newark repeated this contention over and over throughout both the fact and expert discovery

11   periods, including:

12        •    **July 6, 2009:  Newark's First Updated Response to Interrogatories.**

13        Interrogatory No. 1 of Dopaco's first set of interrogatories asked Newark to "describe any

14   spill you allege occurred as a result of Dopaco's operations . . . ."  (See Ex. A to Declaration of

15   Mark Poe in Support of Newark's Opposition to Dopaco's Motion to Vacate Trial Date ("Poe

16   Decl.").)  Newark responded in part:

17                 Dopaco regularly spilled toluene containing solvent and/or waste
                   ink on the floor of the room that contained a 6-color gravure
18                 printing press owned and operated by Dopaco, and that those spills
                   collected in a vault in the floor below the press, and were never
19                 cleaned up by Dopaco. As of the date of this response, Newark does
                   not know if the spills were purposeful, accidental, or due to
20                 Dopaco's carelessness. Newark does not know the precise volume
                   of the spills of this nature, or how much of the total volume escaped
21                 into the environment, but believes that approximately 30 barrels of
                   remaining residue were removed from the vault after Dopaco
22                 vacated the Property.

23   (*Id.*)

24        •    **December 2, 2009:  Newark's Expert Reports**

25        On December 2, 2009, Newark served Dopaco with reports prepared by Newark's experts

26   Keith O'Brien and Peter Krasnoff.  As with Newark's earlier discovery responses, Mr. O'Brien's

27   report clearly identified the basement as containing several "likely release points" for the high

28

1   concentrations of toluene and chemicals found in rotogravure inks that were detected in soil and

2   groundwater at boring site B-1 close by:

3          Likely release points for toluene include: underground storage tanks
and associated piping, *solvent wash up room and associated floor*

4          *sumps, the concrete pit beneath the 6-color rotogravure press, and
the piping associated with disposal of waste inks and solvents in the*

5          *concrete pit beneath the 6-color rotogravure press.*

6   (Poe Decl. Ex. B, at pp. 11-12 (emphasis added).)

7      Mr. Krasnoff's report stated the opinion that the levels of toluene found at the Property

8   posed a threat to human health and the environment.  (*Id.* Ex. M at pp. 2-4.)  Mr. Krasnoff also

9   stated that the threat would continue until the toluene was removed from the soil and groundwater

10  at the Property.  (*Id.* at 4-6.)

11    •     **December 22, 2009:  Newark's Motion for Partial Summary Judgment**

12      On December 22, 2009, Newark filed its motion for partial summary judgment of its

13  claims under the citizen suit provision of the federal Resource Conservation and Recovery Act,

14  42 U.S.C. § 6972 ("RCRA").  The motion reiterated Newark's view that the toluene

15  contamination at the Property posed a risk to human health.  The floor sumps and basement floors

16  are clearly identified as a source of toluene releases on the very first page of Newark's motion:

17          [T]oluene became a RCRA hazardous waste when it was released
to the environment through three pathways associated with

18          Dopaco's printing operation:  (1) Leakage from a 4,000 gallon
underground storage tank ("UST") in which Dopaco stored toluene,

19          and/or its associated piping, (2) leakage and surface spills of
toluene associated with two waste USTs into which Dopaco

20          disposed of toluene-containing waste ink, and (3) *leakage of
toluene and toluene-containing waste inks through the floor of*

21          *Dopaco's basement operation.*

22  (Plaintiff's Memorandum of Points and Authorities in Support of its Motion for Partial Summary

23  Judgment as to Defendant's Liability under the Resource Conservation and Recovery Act

24  ("RCRA"), filed December 22, 2009, at 1 (emphasis added); *see also, id.,* at 8.)

25    •     **March 8, 2010:  Dopaco's Inspection of the Property**

26      On January 12, 2010 – three months after the close of fact discovery – Dopaco for the first

27  time asked to have its expert inspect the Property.  (Poe Decl. Ex. C.)  Dopaco's counsel admitted

28  that the request was untimely.  (*Id.*)  Despite the clear disclosure in Newark's written discovery

1  responses some five months earlier concerning leaks from the basement, counsel sought to excuse

2  its tardiness by claiming to have been surprised by Mr. O'Brien's opinion that the basement

3  sumps and floors contributed to releases of toluene into the soil and groundwater.  (*Id.*)

4         While it was under no obligation to do so, Newark assented to Dopaco's request and

5  arranged for Dopaco's experts to visit the Property on January 19, 2010 in the interest of moving

6  the matter forward and avoiding unnecessary motion practice.  (*Id.* Ex. D.)  Dopaco's counsel and

7  its experts failed to show up on that date.  (Poe Decl. ¶ 2; Ex. D.)  After rescheduling, the visit

8  occurred on March 8, 2010.  Although Dopaco's counsel and its expert toured the basement, and

9  measured and inspected the sumps and other features, Dopaco did not ask to take soil samples or

10 borings during its visit.  (*Id.* ¶ 3.)

11       • **May 12, 2010:  Dopaco's Expert Witness Argued that Soil Samples Should be
            Taken From Under the Floor Slab in the Basement**

12

13       In his May 12, 2010 deposition, Dopaco's expert Patrick Lucia testified that, in his view,

14 testing samples taken from beneath the basement floor is the best means of proving whether the

15 sumps in the basement leaked into the subsurface:

16       What I think Mr. O'Brien should have done in terms of turning his hypothetical
         into a real fact would be to take some samples below the sumps.  It would be a

17       relatively simple process. . . . ***That would have turned it from a hypothetical to a
         fact***.

18

19 (Poe Decl. Ex. E (Dep. of Patrick Lucia at 179:7-16, May 12, 2010) (emphasis added).)

20       • **May 20, 2010:  Newark's Expert Informed Dopaco that Newark has Taken
            Samples From Beneath the Basement Floor**

21

22       At his May 20, 2010 deposition, Mr. O'Brien was questioned at length by Dopaco's

23 counsel about his opinion that the basement floor was a source of toluene in the soil and

24 groundwater at the Property.  (*Id.* Ex. F (Dep. of Keith O'Brien at 129:24-139:1, May 20, 2010.)

25 Mr. O'Brien also testified that Newark had recently, as Dopaco's expert suggested, conducted

26 subsurface tests of soil vapor under the basement floor.  (*Id.* (O'Brien Dep. 22:17-23:20).)

27 Dopaco's counsel asked Mr. O'Brien numerous questions about the samples, but Dopaco did not

28 ask to see the data.

1

2

**B.   Dopaco Learned the Results of the Sub-Slab Testing and About the Methane Data Nearly Two Months Before the Close of Expert Discovery.**

3

4

5

6

7

8

9

10

11

On June 9, 2010, Newark served Dopaco with the supplemental report of its expert Peter Krasnoff, disclosing the data described by Mr. O'Brien.  (Poe Decl. Ex. G.)  Samples taken from beneath the basement floor revealed elevated levels of toluene and its explosive breakdown product methane.  (Poe Decl. Ex. G, pp. 3-4.)  Mr. Krasnoff's supplemental report cited this data as further support for the opinion in his December 2, 2009 report that the continued presence of high levels of toluene in soil and groundwater at the Property poses ongoing threat to human health and the environment.  (*Id.* pp. 2-4.)  The supplemental report further noted that the methane detected in the soil vapor samples was the result of the high concentrations of toluene. (*Id.*)

12

13

14

15

16

17

When Newark served Dopaco with the subsurface data and Mr. Krasnoff's supplemental report, seven weeks remained until the July 27, 2010 cutoff for expert discovery.  At this point, Dopaco had several options available to it.  It could have taken Mr. Krasnoff's deposition.  It could have filed a motion with Magistrate Judge Drozd to seek exclusion of the supplemental report.  It could have asked Newark or the Court to allow another site visit so it could take its own samples.  It did none of these things.

18

19

20

21

22

23

Instead, Dopaco wrote two letters to Newark's counsel.  The first, received twenty days after service of the supplemental report, claimed once more to be "surprised" by evidence supporting Newark's longstanding position that toluene leaking from the basement poses a threat to human health.  (Poe Decl. Ex. H.)[1]  The second, written in late July, threatened sanctions if the supplemental report was not withdrawn.  (Poe Decl. Ex. I.)  These letters are ample evidence that Dopaco was aware of the supplemental report and its potential objections to it.

24

25

However, aside from its letter-writing campaign, Dopaco did nothing until August 9, 2010, at which time it asked the Court to exclude the supplemental report and the soil vapor data

26

27

[1] Dopaco's letter was dated June 29, 2010.  However, it was misaddressed and was not received by Newark's counsel until July 8, 2010.

28

1   in proceedings related to Dopaco's motion for partial summary judgment.  The Court refused,

2   finding that Dopaco had waived objection to the admissibility of the supplemental Krasnoff report

3   by failing to seek relief during the expert discovery period in compliance with the Court's

4   scheduling order:

5               Since Dopaco has not explained why it failed to seek relief before
            the Magistrate Judge as required by Local Rule 302(c)(1) and the
6           scheduling order, Dopaco's objections to the admissibility of
            Krasnoff's supplemental report and August 2, 2010 declaration are
7           overruled. *See Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 537
            (9th Cir. 2001) (upholding district court judge's decision not to
8           sanction because of moving party's "fail[ure] to prosecute the issue
            before the magistrate judge as is required by" the Eastern District's
9           Local Rules and the court's order).

10  (Order Denying Dopaco's Mot. for Summ. J. at 5-6.)

11              **C.      Newark Discovered and Promptly Produced the Gold Bond Binders.**

12          As Newark described in its August 2, 2010 opposition to Dopaco's motion for summary

13  judgment, Newark is in the process of demolishing the buildings on the Property pursuant to an

14  order by the City of Stockton.  (Opposition to Dopaco's Motion for Partial Summary Judgment,

15  filed August 2, 2010, at 9.)  In the process of clearing the building, Newark discovered four

16  binders of documents relating to environmental compliance that appear to have been compiled by

17  a former owner of the property, Gold Bond Building Products.  (*See* November 8, 2010

18  Declaration of Sam Franco, ¶¶ 5-6.)  After reviewing the binders, Newark promptly produced all

19  documents that were responsive to Dopaco's earlier requests for production in compliance with

20  its ongoing obligations under Federal Rule of Civil Procedure 26(e)(1)(A).  (Poe Decl. ¶ 4.)

21          On October 18, 2010, Newark also allowed Dopaco's counsel to review the non-

22  responsive contents of the binders, and to identify any additional documents it wished to copy.

23  (*Id.* ¶ 5.)  Two days later, on October 20, Dopaco's counsel had the entire binder picked up for

24  copying.  (*Id.* ¶ 6, Ex. J.)  Despite being in possession of all four binders for more than a day,

25  Dopaco's instant motion, filed on October 21, inexplicably protests about "Newark's ongoing

26  production," and declares that "the full contents of the binders have not been produced yet."

27  (Motion at 4, n.2.)

28

1   The documents in the four Gold Bond binders are largely inconsequential to the issues in
2   this case, as implicitly recognized by Dopaco's silence as to their content.  The only documents of
3   marginal relevance are cumulative of evidence already in the case:  one document mentions the
4   ink and solvent waste that Dopaco left behind in the sumps when it vacated the property, and
5   another mentions the toluene-containing blanket wash used by another printing operation on the
6   property, both of which facts have long been known to both parties.  (Poe Decl. ¶ 7 Ex. K, L.)

7   **II.     ARGUMENT**

8       **A.     Legal Standard.**

9   Rule 16 was adopted to assist the district courts in the management of an ever-increasing
10  federal docket.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 611 (9th Cir. 1992) ("As
11  the torrent of civil and criminal cases unleashed in recent years has threatened to inundate the
12  federal courts, deliverance has been sought in the use of calendar management techniques. Rule
13  16 is an important component of those techniques.")  Thus, a scheduling order "is not a frivolous
14  piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Id.*

15  Under Rule 16, the scheduling order may only be amended upon a showing of good cause.
16  Fed. R. Civ. Proc. 16(b)(4).  A party that seeks a modification has the burden of proving that the
17  order "cannot reasonably be met despite the diligence of the party seeking the extension."
18  *Zivkovik v. Southern Cal. Edison Company*, 302 F.3d 1080, 1087 (9th Cir. 2002).   If the party
19  seeking the modification has not been diligent, "the inquiry should end and the motion to modify
20  should not be granted." *Id.*

21  Excusable neglect or carelessness of counsel is not a sufficient basis to demand extension
22  of deadlines:  "Moreover, carelessness is not compatible with a finding of diligence and offers no
23  reason for a grant of relief." *Johnson*, 975 F.2d at 609.  A party opposing such motion is not
24  required to show that it would be unduly prejudiced. *Id.* ("Although the existence or degree of
25  prejudice to the party opposing the modification might supply additional reasons to deny a
26  motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.").

27

28

### B.     Dopaco Cannot Show Good Cause, Because It Has Not Been Diligent.

As the record described above makes clear, Dopaco has repeatedly failed to heed Newark's positions and evidence in this case or to respond in accordance with deadlines and procedures set forth in the scheduling order.  In *Johnson v. Mammoth Recreation*, the Ninth Circuit held that such patterns are inconsistent with a showing of good cause under Rule 16.  *Johnson*, 975 F.2d at 609.  In that case, the moving party had ignored information that should have provided it notice that it needed to amend its complaint.  *Id.*  This prevented a finding of diligence.  *Id.* ("Failing to heed clear and repeated signals that not all the necessary parties had been named in the complaint does not constitute diligence.").

Like the moving party in *Johnson*, Dopaco's counsel either failed to notice or chose to ignore what Newark has told it for the past two years about this case, in pleadings, discovery responses, documents, expert reports, and motion practice, including evidence that toluene had been released from the basement.  As in *Johnson*, this overcomes any claim that Dopaco could make that it was diligent in its pursuit of evidence:

> The burden was upon Johnson to prosecute his case properly. He cannot blame Mammoth Recreations for his failure to do so. The simple fact is that his attorneys filed pleadings and conducted discovery but failed to pay attention to the responses they received. That is precisely the kind of case management that Rule 16 is designed to eliminate.

*Id.* at 609.

Dopaco has not explained, let alone justified, its long patterns of dilatory litigation in this case, as exemplified by:

- Dopaco's failure to seek soil or groundwater samples at the Property during fact discovery, in connection with its previous untimely inspection of the Property, or following its receipt of Newark's soil vapor data;

- Dopaco's failure to take the deposition of Newark's expert Peter Krasnoff during the period for expert discovery;

- Dopaco's failure to object to the supplemental Krasnoff report under the deadlines or in compliance with the procedures set forth in the scheduling order.

Given Dopaco's longstanding pattern of inattention and inaction in this case, its recent spate of filings is no evidence of diligence and does not constitute good cause under Rule 16.

**C.   None of the Bases Dopaco Identifies Justifies Reopening Discovery and Vacating the Trial Date.**

Dopaco's request for an indefinite reopening of fact and expert discovery is predicated on six supposedly "untimely disclosures" by Newark.  (*See* Motion at 3-4.)  A careful review of those six bases shows that four of them have already been rejected by the Court, and the other two are of no serious consequence to this litigation.

**1.   The Court has already held that Dopaco waived its opportunity to challenge the methane and demolition evidence.**

Of the six bases Dopaco offers to reopen discovery, the first and third concern the results of Mr. Krasnoff's sub-slab testing, which showed that the toluene contamination has resulted in explosive levels of methane accumulating under the foundation of the Property.  (*Id.*)  The second and fourth bases concern the fact that the Property is under a demolition order by the City of Stockton, which process is likely to endanger workers as they are exposed to the toluene and methane during demolition.  (*Id.*)

In Dopaco's briefing on its motion for partial summary judgment, it challenged all of this evidence, and the Court rejected those objections.  With respect to Mr. Krasnoff's sub-slab testing and the methane evidence, Newark argued, and the Court agreed, that Dopaco had waived such objections by not raising them before Magistrate Drozd during the expert discovery period prescribed by the Court's scheduling orders.  (*See* Order Denying Dopaco's Mot. for Summ. J. at 5-6.)

With respect to the demolition evidence, Newark pointed out that Dopaco never asked for such documents during discovery, and never asked Newark to detail its theory of "imminent and substantial endangerment" during discovery.  The necessity for Newark to produce such evidence arose when Dopaco claimed, in its summary judgment motion, that there was no evidence that humans might be endangered by the contamination.  Dopaco objected to the demolition evidence, but the Court correctly concluded that "Dopaco, however, has not supported its position with averments showing that this evidence should be excluded.  Since Dopaco's bare arguments are insufficient to satisfy its burden, Dopaco's objections to this evidence are overruled."  (*Id.* at 6-7.)

1   Dopaco's instant motion offers no argument for why the Court should revisit its prior

2   rulings on these issues, or why the Court should give Dopaco a second chance to develop its own

3   evidence on these points, at the expense of the schedule the Court announced two years ago.

4           **2.**      **Nothing in the Gold Bond binders justifies throwing out the scheduling order or indefinitely delaying the trial.**

5

6   The fifth and sixth bases Dopaco relies on for the indefinite delay it seeks are the four

7   binders of Gold Bond documents Newark recently discovered and promptly produced.  As

8   described in Part I.C. above, the documents in those binders are cumulative of evidence both

9   parties have known about since the earliest stages of this case, and provide no reason why the

10  Court should abandon its scheduling order three months before trial.  In any event, Dopaco's

11  vague assertions about these documents are insufficient.  *Irving v. County of Sacramento*, 231

12  Fed. Appx. 584, 585-86 (9th Cir. April 17, 2007) (affirming this Court's denial of motion to

13  amend scheduling order because moving party failed to explain the substantive effects of the late

14  transcripts they claimed to need).

15  Contrary to what it claims, at the time the instant motion was filed, Dopaco had received

16  all of the responsive documents from the binders, and even had the entirety of all four binders in

17  its possession.  (Poe Decl. ¶ 6.)  Yet Dopaco neither describes the documents nor makes any

18  effort to relate them to the disputed issues in this case.  It also does not explain how any of the

19  documents justify throwing out the scheduling order, indefinitely postponing the trial, or allowing

20  Dopaco to seek evidence it could have obtained before.  Dopaco cannot justify the relief it seeks

21  based on the Gold Bond binders.

22  The reasons for Newark's late discovery of the Gold Bond binders, and the facts as to how

23  they were discovered in a long-unused part of the facility where no one would expect to find

24  environmental documents, are painstakingly described in the accompanying Declaration of Sam

25  Franco.  But even if the Court should determine that the Gold Bond binders were produced

26  unjustifiably late, the most sensible way to deal with them is by a motion in limine, not by an

27  indefinite reopening of fact and expert discovery.  In fact, four days after filing the instant motion,

28  Dopaco brought just such a motion.  (*See* Defendant's Notice Of Motion And Motion To Limit

1   Use Of Improperly Disclosed Documents [Docket No. 121, filed Oct. 25, 2010].)  Although that

2   motion was oddly brought before Magistrate Drozd instead of the trial court, it implicitly

3   recognizes that a motion in limine is the proper way to resolve the dispute about the Gold Bond

4   binders.

5        **III.    CONCLUSION**

6           For all of the reasons described above, Dopaco has failed to prove that the trial scheduling

7   order should be modified.  Its motion should be denied.

8

9   Respectfully submitted,

10  Dated:  November 8, 2010                    PETER HSIAO
                                                ROBIN S. STAFFORD
11                                              MARK POE
                                                MORRISON & FOERSTER LLP
12

13

14                                          By:  /s/ Robin Stafford
                                                 Robin Stafford
15
                                            Attorneys for Plaintiff
16                                          THE NEWARK GROUP, INC.

17

18

19

20

21

22

23

24

25

26

27

28